# Alcorn et al. v. Alcorn et al.

June 2, 1939.

W. J. Baxter, Judge.

John S. Deering and L. Saunders for appellants.

John C. Watts for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

This appeal is from a judgment entered on a jury verdict finding a paper probated in the county court as

the will of James Alcorn to be his last will. The grounds of contest before the jury were that the testator did not have sufficient mental capacity to make a will and that he did not sign the will. It is now urged that the verdict of the jury was flagrantly against the evidence in finding against the appellants on both of these issues.

The testator died on April 30, 1936. At one time he lived in the state of Ohio, but had returned to Jessamine County approximately a year and a half before his death. He owned a small farm of not more than 20 or 25 acres, worth something in the neighborhood of $1,000, and his daughter, Lizzie Alcorn, sole devisee in the will, resided with him and she had with her her young son. One of the testator's sons also resided at the house with him for some time prior to his death. Testator owed debts of approximately $400 and had practically no personal property, so that the net value of the estate in controversy is approximately $600. The family apparently existed largely on money received from relief agencies.

The will was written on April 23, 1936, just one week before the testator's death. On that day Lizzie Alcorn, sole devisee in the will, went to Nicholasville and had the will drawn by an attorney, informing him as to the nature of the will her father desired to make. She returned home with the will and she and the two attesting witnesses, Beulah Poore and Mrs. Harlan Whittaker, state positively that the testator signed the will in their presence.

On the issue of mental capacity, ten or more witnesses testify that a week or more before the testator's death he was in a coma, unable to turn himself over in bed and unable to answer any questions. One of these witnesses was Dr. H. L. McClain, who says that he saw testator about a week before his death, although he does not fix the day definitely, and that at that time the testator was unconscious and in a coma as the result of nephritis accompanied by senile gangrene, and that he was unable to arouse him from a stupor. This witness was most positive that the testator was not capable of doing anything. One of testator's sons and a neighbor testified that the testator told them how he wanted his property divided and said that if they didn't watch Lizzie she would get it all.

On the other hand, Lizzie Alcorn, the devisee in the

will, two of testator's sons, the two attesting witnesses and two other witnesses testified that on the day the will was written and for two or three days thereafter, the testator's mind was good, that he recognized the witnesses and talked to them. Dr. B. C. Gillespie, a witness for appellants, was called to see the testator professionally and was at the house several times shortly before his death, particularly on April 23, the day the will was written. He testifies that he saw nothing wrong with testator's mind, that he asked testator questions on that day and he answered them. Dr. Gillespie consistently refused, however, to express any opinion on the testator's capacity to make a will. Clarence Alcorn, a son of testator testifying against his own interest, stated that he saw the testator three or four days before his death and that his mind was perfectly good; that testator asked the witness to shave him and that he did so. Another son said his father's mind was all right two weeks before his death.

From this statement, it is apparent that the evidence on the issue was sharply conflicting and was such as to make it peculiarly a question for the jury to decide. The numerical weight of the testimony is on the side of appellants, but it is not for us to say whether the jury was right or wrong in reaching the conclusion that testator had sufficient mental capacity to make this will. The jury is peculiarly the judge of such issues and it is only where the verdict is so flagrantly against the evidence as to indicate that it was reached as a result of passion and prejudice on the part of the jury that we are at liberty to hold that the verdict reached by the jury is incorrect.

On the issue of whether or not the testator signed the will, Lizzie Alcorn and the two attesting witnesses testify very positively that he did sign the will in their presence. Dr. McClain and one of testator's sons testified that they knew his handwriting and that the will was not signed by him. Dr. McClain also states that one of the attesting witnesses told him that she signed the will as a witness at her home. A mortgage executed by the testator was introduced in evidence and this original mortgage and the original will have been brought into this record and we are asked to say from an examination of the signature to the mortgage and the signature to the will that testator did not sign the will. It must be admitted that if it was definitely established

that the testator actually signed the mortgage appearing in the record, we would have great difficulty in reconciling ourselves to believing that he also signed the will. The mortgage was executed ten years before the testator's death and the signature thereto bears no resemblance to the signature to the will. The signature to the mortgage was evidently made by one who was barely capable of writing or at least wrote a very poor hand. The signature to the will bears no resemblance whatever thereto and is written very clearly and legibly, although there is some indication of tremor in the hand that wrote it. It was not established definitely that testator actually signed the mortgage. The deputy clerk before whom the mortgage was acknowledged testifies that the mortgage was not signed before him by the testator, but merely acknowledged to be his act and deed. It was therefore possible that some one other than the mortgagor signed the mortgage for him and that he merely acknowledged it.

Kentucky, Statutes, Section 1649, provides that where handwriting of any person is proposed to be used for purposes of comparison, the genuineness of the writing proposed to be used must be proved by other than opinion evidence. In other words, satisfactory proof must be adduced that such writing to be used for comparison purposes was actually signed by the persons purporting to have signed it. This was not done here, and while it is most likely that the testator did sign the mortgage, we are not at liberty to assume that he did so and then, by comparing this mortgage with the will, hold that the verdict of the jury on this issue was flagrantly against the evidence. While we entertain some doubt that the testator actually signed the will in question, we are unwilling under the circumstances shown here to substitute our judgment for that of the jury and hold that the verdict was flagrantly against the evidence on this issue.

It is suggested in appellant's brief that the trial court erroneously permitted appellee to prove the value of the testator's estate. No authority is cited and little stress is placed on this suggestion. We find that Page on Wills, 2d Edition, Section 766, says:

"Evidence as to the value of testator's estate, including evidence as to the respective values of the different items of property devised to different persons, is admissible."

Without deciding that evidence of this character is competent in all will contest cases, we may say that we fail to see wherein the substantial rights of the appellants were prejudiced in any way by the introduction of such proof in this case.

The judgment is affirmed.